IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NATHAN L. LEOPOLD,

                              Petitioner,                              OPINION and ORDER

        v.                                                            21-cv-752-jdp

CHERYL EPLETT,

                              Respondent.

---

With counsel, prisoner Nathan Leopold petitions for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2019 convictions in state court for (1) homicide by operation of a motor vehicle with a detectable amount of restricted controlled substance in blood; and (2) operating a motor vehicle with a detectable amount of restricted controlled substance in blood, causing injury. Leopold contends that the trial court should have suppressed incriminating statements that he made to a sheriff's deputy after the crash, pursuant to *Miranda v. Arizona*, 384 U.S. 436, 466 (1966). Without informing Leopold of his *Miranda* rights, the deputy asked Leopold questions about his drug use while Leopold was on a gurney in the back of an ambulance and again when he was in a hospital bed awaiting treatment. Leopold contends that he could not leave these premises and the questionings were custodial interrogations that required *Miranda* warnings. The trial court denied Leopold's motion to suppress his incriminating statements, and the Wisconsin Court of Appeals affirmed, concluding that the deputy's questions were not custodial interrogations.

The petition is fully briefed and ready for a decision.[1] The question on habeas review is not whether the Wisconsin Court of Appeals' decision was correct. Habeas review is deferential, so the question here is whether the court of appeals' decision was based on an unreasonable application of United States Supreme Court precedent, which means that it was so plainly wrong that no fairminded jurist could agree with it. Leopold has not met that standard. The court of appeals' application of *Miranda* to his case was careful and reasonable. The state court reviewed the relevant circumstances surrounding the interrogation and weighed the proper legal factors. This court must deny Leopold's petition.

BACKGROUND

The court takes most of the following facts from the Wisconsin Court of Appeals' opinion, *State v. Leopold*, 394 Wis. 2d 188, 949 N.W.2d 889 (Ct. App. 2020), on the docket at Dkt. 6-5. The court has also included some additional facts drawn from body camera footage of the interrogations, to provide more detail where it is helpful.[2] The material facts are not disputed; Leopold challenges the application of the law to those facts.

**A. Ambulance interrogation**

One evening in October 2017, Leopold crashed his car head-on with another car traveling in the opposite direction. The other driver was killed and the passenger in the other car was injured.

---

[1] Leopold did not file a reply brief despite being given the opportunity to do so.

[2] The footage is split into five separate video files, which have been provided to the court, but are not on the docket. The court will refer to each file by the last three digits of the filename.

Green County sheriff's deputy Joshua Mayer arrived at the scene at approximately 6:00 p.m. Another deputy already on scene told Mayer that he had found a pipe and a bag of marijuana in Leopold's car and that the car had a strong odor of marijuana. The other deputy told Mayer to issue Leopold a citation for operating while intoxicated (OWI) and said that the district attorney would later amend the charge to a homicide by intoxicated use. Video '169, at 35:40. Mayer asked if he should try to get Leopold to submit to field sobriety testing. The other deputy said that Mayer could try to talk to Leopold in the ambulance before he was taken to the hospital. After a brief exchange about which field sobriety tests Mayer should administer, the other deputy said, "just look for an admission. Tell him 'hey we found your pipe and your weed, when's the last time you smoked.'" *Id.* at 36:22.

Mayer found the ambulance and asked the medical personnel inside if he could talk to Leopold before he was transported. The medics told Mayer that he could if he kept it under a minute. Mayer climbed into the back of the ambulance. Leopold was lying on a gurney and wearing a neck brace. As staff continued to tend to Leopold, Mayer said "Hey, Nate, we found your pipe and your weed in your vehicle. When is the last time you smoked?" Leopold replied "oh, earlier today." Mayer asked, "like what time?" Leopold clarified, "uh, two o'clock." *Id.* at 37:04. Their interaction in the ambulance lasted 14 seconds.

Mayer told medical staff that he would follow them to the hospital, and he stepped out of the ambulance.

## B.  Hospital interrogation

Before Mayer arrived at the hospital, he used a printer in his squad car to print three citations for possession of drug paraphernalia, operating while intoxicated, and operating left

of the center lane. Mayer brought the citations with him into the hospital, along with some other paperwork.

Mayer asked hospital staff if he could speak with Leopold. After a few minutes, staff led him to the room where Leopold was being treated for his injuries. Mayer pulled aside a curtain to enter the room. Leopold was lying on his back on a hospital bed with a cervical collar around his neck.

It had been about 50 minutes since Mayer had questioned Leopold in the ambulance. Mayer identified himself to Leopold, and Leopold acknowledged the identification with an "uh-huh." Video '170, at 0:01. Mayer said he was there because officers had located a pipe and marijuana in Leopold's vehicle. Mayer said that he "need[ed] to search [Leopold's] clothing," which was sitting on a chair nearby. Leopold nodded and said, "Yeah, that's fine." *Id.* at 0:05. Mayer briefly looked through Leopold's clothing and found only a wallet. Mayer then asked Leopold when he had last smoked marijuana, how much he smoked, and where he kept his drugs. Leopold responded that he last smoked at 2:00 p.m. and that all of his marijuana was in the pipe.

Mayer said, "Based on what we observed in the vehicle and your admission that you were smoking weed today, I'm going to request that you submit to field sobriety." Leopold nodded and said, "sure," without hesitation. After a few minutes of testing, medical personnel told Mayer that they needed to take Leopold away for treatment in another part of the hospital. The staff took Leopold out of the room and Mayer waited behind.

Staff returned Leopold to the room about 45 minutes later. Mayer told Leopold that he had a couple of other questions before they resumed sobriety testing. Mayer asked Leopold a few questions about the events leading up to the crash, including whether Leopold had been

drinking. Leopold said that he had two beers at dinner around 5:00 p.m. Mayer then asked Leopold more questions about how much marijuana he had smoked, and Leopold reiterated that he had taken one hit from a full pipe at 2:00 p.m.

Mayer told Leopold that he would continue to administer sobriety tests if Leopold was still willing to submit to them, and Leopold nodded. After a few minutes of additional testing, Mayer told Leopold that he was going to issue a citation for operating while intoxicated, but that the citation would likely be amended to an OWI causing fatal injury. Leopold responds, "what?" Mayer told Leopold that the driver of the vehicle Mayer had hit had died. Leopold said, "oh, no." Video '171, at 5:45.

Mayer placed citations for operating left of center, possession of drug paraphernalia, and operating under the influence on Leopold's chest and told Leopold that he would have a mandatory court date to address the citations. Mayer asked Leopold if he had any questions regarding the citations, and Leopold responded "no." Leopold asked, "A person died?" and closed his eyes.

Mayer then read Leopold the "Informing the Accused" form, which is a statutory script that provides information about the legal consequences of consenting to chemical testing. Mayer asked Leopold if he would consent to having his blood drawn, and Leopold said he would. Leopold signed the consent form, and a medical professional drew Leopold's blood.

After the blood draw was completed, Mayer asked Leopold if he was willing to answer questions for an "alcohol drug influence report." Leopold responded, "no." Video '173, at 8:01. Mayer told Leopold that he would still read him the pre-interrogation warnings even though he knew Leopold was going to say no. Mayer read Leopold his *Miranda* rights and again asked Leopold if he was willing to answer questions. Leopold responded "no," and Mayer said that

he would document that Leopold had refused questioning. Mayer asked Leopold if he had any questions about his citations or the charges. Leopold responded, "no." Mayer said, "that's all I have" and left the room.

## C. Trial proceedings

At trial, Leopold moved to suppress his statements to Mayer as well as the results of his blood test. The trial court denied the motion after a hearing. Leopold later pleaded no contest to (1) homicide by operation of a vehicle with a detectable amount of a restricted controlled substance in blood and (2) operating a motor vehicle with a detectible amount of a controlled substance in blood, causing injury. The court convicted Leopold of the offenses and sentenced him to fifteen years of confinement and five years of extended supervision.

## D. Direct appeal

Leopold appealed his conviction to the Wisconsin Court of Appeals, contending that the trial court erred by denying his suppression motion. Leopold argued that he was in custody when Mayer interrogated him in the ambulance and in the hospital room, so Mayer was required to read Leopold his *Miranda* rights. Because Leopold's petition turns on whether the court of appeals reasonably applied *Miranda*, this court will summarize the court of appeals' opinion in some detail.

The court of appeals explained that a threshold question for determining whether an interrogation was custodial is whether the functional equivalent of a formal arrest has occurred. That question turns on whether, under the totality of the circumstances, a reasonable person would not feel free to terminate the interview and leave the scene. Dkt. 6-5, ¶ 9 (citing *State v. Lonkoski,* 2013 WI 30, ¶ 6, 346 Wis. 2d 523, 828 N.W.2d 552). Factors to consider include the location, duration, and purpose of the interrogation and the degree to which the person is

or is not restrained. Dkt. 6-5, ¶ 13. To evaluate the level of restraint, courts consider whether the interviewee was placed in handcuffs, frisked, or transported to another location, as well as the number of officers involved and whether officers utilized a weapon. *Id.* (citing *State v. Torkelson*, 2007 WI App 272, ¶17, 306 Wis. 2d 673, 743 N.W.2d 511).

The court concluded that neither of the two interrogations took place after the functional equivalent of an arrest. As for the first interrogation in the ambulance, the court acknowledged that, because of his injuries, Leopold was not able to "leave the scene." Dkt. 6-5, ¶ 10. But a person is in custody for *Miranda* purposes only if the restrictions on his freedom of movement are caused or created by the authorities. *Id.,* ¶ 22 (*citing State v. Clappes*, 117 Wis. 2d 277, 284, 344 N.W.2d 141 (1984)). The court noted that the interrogation was short, lasting only 14 seconds; it took place in the presence of medical personnel; Mayer was the only officer present; and Mayer and Leopold spoke "in calm, conversational tones." *Id.,* ¶ 19.

Leopold's primary argument for why the interrogation was custodial was that Mayer intended to obtain admissions from Leopold for use in a criminal prosecution. The court considered but rejected that argument because Mayer's subjective intent was not relevant to whether a person in Leopold's position would believe he was in custody. *Id.* at ¶ 23. The court did acknowledge that "[Mayer's] question in the ambulance, viewed objectively, revealed an obvious purpose to collect evidence against Leopold." *Id.* at, ¶ 25. But it concluded that Leopold had not developed an argument why that fact was entitled to significant weight in the *Miranda* custody analysis.

As for the second set of questions in the hospital, the court considered that the interrogation took place in the neutral setting of a hospital, with medical staff freely coming and going from the room; the interrogation was relatively short, excluding the 46-minute

7

interruption for medical treatment; Leopold was not handcuffed or restrained by Mayer; and none of Mayer's statements or actions were "commanding or controlling." *Id.*, ¶ 43. The court acknowledged that Mayer did not tell Leopold that he could terminate the interrogation, which it deemed to weigh in Leopold's favor. But Mayer had asked Leopold's permission to perform field sobriety testing and search his clothes, which would lead a reasonable person to believe that he could make independent choices in his interactions with Mayer and that Mayer would respect those choices. *Id.*, ¶ 46.  Under those circumstances, the court concluded, a reasonable person would have known that he was free to terminate the encounter with Mayer at any time.

Leopold contended that the interrogation was custodial because he had already admitted to "marijuana use in advance of driving and a vehicle crash, and possession of paraphernalia," *id.*, ¶ 45, and Mayer knew that he was going to issue Leopold citations. Thus, Leopold argued, a person in his situation would know that he was an "inevitable criminal defendant" and would not have felt free to end the interview. The court rejected that argument, for two reasons. First, Mayer's subjective intent behind asking Leopold further questions was not relevant. Second, even if Leopold knew that Mayer was going to issue citations to him, that would not lead a reasonable person in Leopold's shoes to believe that he was in custody. Although admitting to a serious crime can be relevant to whether a defendant would feel free to end a police interaction, an admission does not necessarily make an interrogation custodial. *Id.*, ¶ 45 (citing *State v. Bartelt*, 2018 WI 16, ¶47, 379 Wis. 2d 588, 906 N.W.2d 684). The court noted that the interrogation in *Bartelt* was not custodial even though its facts were "considerably more dramatic" than the facts of Leopold's case: the defendant in *Bartelt* was interrogated in a police station and confessed to physically assaulting a woman. The court

8

concluded that Leopold's admissions were "entitled to some weight, but not significant weight" under the totality of the circumstances.

Because the court concluded that the functional equivalent of an arrest had not occurred, it did not reach the second part of the "in custody" inquiry, which asks whether the environment was coercive. Dkt. 6-5, ¶ 11. The court of appeals affirmed the judgment of the trial court.

The Wisconsin Supreme Court denied Leopold's petition for review. Leopold timely filed a petition for a writ of habeas corpus with this court.

ANALYSIS

A federal court may grant habeas relief only if a state court adjudication on the merits (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). Leopold does not challenge any of the state court's factual findings, but he contends that the state court's decision that he was not in custody for either interrogation was an unreasonable application of *Miranda*. Federal courts look to the last reasoned state-court decision on the merits of the case. *Lentz v. Kennedy*, 967 F.3d 675, 688 (7th Cir. 2020) (citing *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018)). Because the Wisconsin Supreme Court denied discretionary review, this court will consider the state court of appeals decision affirming the judgment of the trial court.

The standard for legal errors under § 2254(d)(1) is intentionally difficult to satisfy. *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (citing *Harrington v. Richter*, 562 U.S.

86, 102 (2011)). The issue is not whether the court agrees with the state court decision or even whether the state court decision was correct. *Id.* Rather, the issue is whether the decision was unreasonably wrong under an objective standard. *Id.* Put another way, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter,* 562 U.S. at 103.

Leopold contends that the court of appeals' decision that he was not in custody for either interrogation was an unreasonable application of *Miranda* to the facts of his case. Under *Miranda,* a criminal prosecution may not use statements "stemming from custodial interrogation of the defendant" unless the defendant was warned, prior to questioning, that he had the right to remain silent and the right to an attorney. 384 U.S. at 444. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* A person is in custody for *Miranda* purposes if, under the totality of the circumstances, "a reasonable person [would] have felt that he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane,* 516 U.S. 99, 112 (1995). Factors to consider include "the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Howes v. Fields,* 565 U.S. 499, 509 (2012) (citations omitted).

In the context of federal habeas review, whether a state court's application of the law was unreasonable "can depend in part on the nature of the relevant rule." *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004). The *Miranda* "in custody" inquiry is a general standard, so state courts have "more leeway" in how they apply the standard to the facts of a specific case. *Id*; *Lentz,* 967 F.3d at 689.

The Wisconsin Court of Appeals' application of *Miranda* to the facts of Leopold's case was reasonable, particularly so under the deferential standard governing habeas review. In reaching its conclusion, the court of appeals considered the relevant factors including the location of each interrogation, their duration, the lack of restraints, the nature of the questions, and Mayer's demeanor. The thoroughness of the court of appeals' analysis dooms the habeas petition. *See Lentz*, 967 F.3d at 690 (denying habeas relief because state court "extensively reviewed all of the circumstances surrounding the interrogation and weighed all of the proper 'in custody' factors.").

Leopold does not expressly identify any flaws or omissions in the state court's opinion. Instead, for each interrogation, Leopold provides a long list of factors and argues that those factors weigh toward a conclusion that Leopold was in custody. But the court's job here is not to re-weigh the factors. The court of appeals addressed nearly every factor that Leopold identifies. In addition to the factors discussed above, the court expressly addressed the arguments that Leopold now makes in his habeas petition: that (1) Mayer subjectively intended to obtain incriminating statements and planned to issue citations to Leopold; (2) Leopold knew that he was being investigated for, or was about to be charged with, a crime; and (3) Leopold was not physically capable of leaving the scene, either because of his injuries or because he was attached to medical devices. The court of appeals explained why those facts were entitled to no weight or only some weight: (1) Mayer's subjective intent was irrelevant because the "in custody" test is objective; (2) a person who knows they are a suspect is still capable of terminating a police encounter; and (3) the limitations on Leopold's freedom of movement weren't caused by police. Although the court of appeals relied on Wisconsin state

11

precedent, Leopold provides no authority from the U.S. Supreme Court, or from anywhere else, to show that the court of appeals' analysis on those issues was incorrect.

Leopold raises only one issue that the court of appeals did not consider. Leopold argues that he *did* terminate the encounter, once Mayer read the *Miranda* warning. This, the argument goes, shows that Leopold would have refused questions earlier if he knew that he could. But Leopold's actual subjective beliefs about whether he was free to terminate the encounter is not relevant to the "in custody" analysis, which turns on the objective circumstances of the interrogation. Those approached by the police for questioning may or may not realize that they have a right to refuse to answer. But only once a person is objectively in custody does he or she have the right to *Miranda*'s express warning that they need not answer the officer's questions.

The state court's decision is well within the bounds of the Supreme Court's *Miranda* cases. *Stechauner v. Smith*, 852 F.3d 708 (7th Cir. 2017), is particularly instructive here. In *Stechauner*, petitioner sought habeas relief on the ground that the trial court should have suppressed statements that he made to police while he was in hospital being treated for a gunshot wound. *Id.* at 711. Three officers interrogated Stechauner for about 90 minutes while Stechauner was lying in his hospital bed in a gown and connected to an intravenous drip. The officers never told Stechauner that he was free to terminate the conversation. The Wisconsin Court of Appeals concluded that the interrogation was not custodial. The Seventh Circuit concluded that the state court's decision was a reasonable application of *Miranda* because "the interrogation was relatively short" and Stechauner had not been placed in handcuffs or other restraints. *Id.* at 716. Although Stechauner's freedom of movement was restricted, it was significant that he "was primarily restrained not by the might of the police," but by the gunshot

wound and his treatment. *Id.* (quoting *United States v. Jamison*, 509 F.3d 623, 632 (4th Cir. 2007)).

*Stechauner* shows that a reasonable jurist could conclude that the circumstances of Leopold's interrogation were not custodial. Like the petitioner in *Stechauner*, Leopold was not able to "leave the scene." But he was restrained by his injuries and the need for medical treatment, not because of anything law enforcement officers did. Leopold's interrogations were shorter than the interrogation in *Stechauner*, and Leopold was interrogated by only one officer, as opposed to the three officers who interrogated Stechauner.

At bottom, Leopold's argument here is that the relevant factors should weigh in his favor. But mere disagreement with how the state court weighed the facts does not entitle Leopold to habeas relief. *See Lentz*, 967 F.3d at 675. Even if "certain facts weigh against a finding that [Leopold] was in custody" and "[o]ther facts point in the opposite direction," this does not make the state court's decision an unreasonable application of federal law. *Alvarado*, 541 U.S. at 664–65. The court of appeals provided justification for its conclusions, and Leopold has not shown that the court failed to consider any important factors or otherwise erred in its application of *Miranda*.

Because the court is denying Leopold's petition on the merits, the court need not consider respondent's argument that any error in Leopold's state-court proceedings was harmless.

## CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain

a certificate of appealability, Leopold must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 474 (2000). Even if fairminded people could disagree on whether Leopold was "in custody" under *Miranda*, no reasonable jurist could conclude that the Wisconsin Court of Appeals' application of *Miranda* was "so lacking in justification" that Leopold is entitled to habeas relief. *Richter*, 562 U.S. at 103. A certificate of appealability will not issue.

ORDER

IT IS ORDERED that petitioner Nathan Leopold's petition for a writ of habeas corpus, Dkt. 1, is DENIED, and a certificate of appealability is DENIED. The clerk of court is directed to enter judgment accordingly.

Entered June 2, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

14